UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

| In re: | § | |
|---|---|---|
| | § | Case No. 11−14038 −TSU |
| JACKSON GREEN, LLC, | § | |
| | § | Chapter 11 |
| | § | |
| Debtor. | § | Hon. Thomas S Utschig |
| | § | |

**MOTION OF WELLS FARGO BANK, N.A., AS TRUSTEE, TO DISMISS DEBTOR'S CHAPTER 11 CASE OR IN THE ALTERNATIVE MODIFY THE AUTOMATIC STAY**

Wells Fargo Bank, N.A., as trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-C4 (the "Trustee"), by its undersigned counsel, respectfully files this motion for entry of an order (A) dismissing the chapter 11 case of Jackson Green, LLC (the "Debtor"); or alternatively, (B) modifying the automatic stay to permit the Trustee to foreclose on its collateral. In further support of the Motion, the Trustee respectfully asserts as follows:

**PRELIMINARY STATEMENT**

1. This case is the **second** chapter 11 case the Debtor has filed within the last 2 and ½ years. The Debtor originally filed for bankruptcy before this Court on January 9, 2009 (the "First Bankruptcy Case"), Case No. 09-10099. The Court confirmed the Debtor's chapter 11 plan (the "Original Plan") on May 18, 2010 – only a mere thirteen months ago. A copy of the Original Plan is attached as Exhibit 1.[1]

2. The Debtor, the owner of a commercial office building and parking lot in Chicago (the "Properties"), now seeks to avail itself of the benefits of Chapter 11 once again for a second time in this present case (the "Second Bankruptcy Case").

---

[1] The First Bankruptcy Case was closed just a little over a year ago on June 14, 2010.

3.      Notwithstanding the express provisions of the order confirming the Original Plan (the "Original Confirmation Order") which expressly provided that the Trustee is entitled to foreclosure upon the Properties if the Debtor defaulted under the Original Plan (see Original Confirmation Order p. 6), the Debtor filed this second bankruptcy. A copy of the Original Confirmation Order is attached as Exhibit 2.

4.      In fact, the Debtor filed its Second Bankruptcy Case to stay the very relief it granted in the Original Confirmation Order – the Trustee's ability to foreclose.

5.      The Trustee filed a verified complaint for foreclosure in Cook County, Illinois on June 13, 2011 (the "Foreclosure Action"). A hearing to appoint a receiver was scheduled for June 24, 2011. Yet the Debtor filed for bankruptcy on June 23, 2011 – on the eve of the state court receiver hearing - to stay both the Foreclosure Action and the receiver hearing. Copies of the verified complaint and motion to appoint a receiver in the Foreclosure Action are attached hereto as Exhibits 3 and 4, respectively.

6.      As such, the Trustee requests that the automatic stay be lifted and/or this case be dismissed for no less than the following five reasons. First, the Original Confirmation Order expressly provides for relief from the stay in the event of the Debtor's default under the original Plan and/or Confirmation Order – which has occurred here. Second, this Second Bankruptcy Case should be dismissed as a bad faith *serial* filing. Third, this case should be dismissed for cause under 11 U.S.C. § 1112(b). Fourth, the court should dismiss this case under 11 U.S.C. § 305(a)(1) as it is in the best interests of the Debtor and its creditors. Fifth, the automatic stay should be terminated for cause pursuant 11 U.S.C. § 362(d).

## JURISDICTION

7.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

MILW_11347445.1

8. The statutory predicates for the relief requested herein are §§ 361, 362, 363, and 1112 of the Bankruptcy Code.

## STATEMENT OF FACTS

### A. The Loan Documents

9. On or about June 9, 2006, Jackson Green executed certain loan documents (collectively, the "Loan Documents"), including certain notes (the "Notes") in connection with a commercial loan (the "Loan") extended by Column Financial, Inc. ("Column") related to two Chicago commercial properties, which have the addresses of 833 W. Jackson Boulevard, Chicago, Illinois and 322 S. Green Street, Chicago, Illinois, respectively (the "Properties"). One property is a commercial office building and the other is a parking lot that supports the office building. Jackson Green's indebtedness under the Loan is secured by, inter alia, a Mortgage, Security Agreement and Fixture Financing Statement (the "Mortgage") that encumbers these Properties, as well as an Assignment of Leases and Rents, both of which were duly recorded with the Cook County, Illinois Recorder of Deeds (the "Cook County Illinois Recorder"). A copy of the Mortgage is attached hereto as Exhibit 5.

10. Specifically, the Loan was bi-furcated into two notes: an "A" note ("Note A") and a "B" note ("Note B", collectively, the "Notes"). Pursuant to Note A, Jackson Green borrowed a total of $17,748,000.00, bearing an interest rate of 6.18% per annum and was obligated to make equal monthly installments of $106,470.76. Pursuant to Note B, Jackson Green borrowed a total of $1,137,500.00, bearing an interest rate of 12.25% per annum and was obligated to make equal monthly installments of $11,919.82. Copies of the Notes are attached hereto as Exhibit 6.

11. On June 9, 2006, Column, as assignor, executed an Assignment of Mortgage, Security Agreement and Fixture Financing Statement and Assignment of Leases and Rents to

3

Lender, as assignee (the "Assignment"). The Assignment was duly recorded with the Cook County Illinois Recorder. A copy of the Assignment is attached hereto as Exhibit 7.

12. The Trustee also caused to be filed (i) a UCC Financing Statement filed by Original Lender, as Collateral Agent for the holder of the A Note and the holder of the B Note, on or about June 14, 2006, as Document Number 0616516086 with the office of the Cook County Recorder of Deeds; and (ii) a UCC Financing Statement, filed by Original Lender, as Collateral Agent for the holder of the A Note and the holder of the B Note, on or about June 30, 2006, with Illinois Secretary of State bearing file number 11111548 (the "Financing Statements"). A copy of the Financing Statements are attached hereto as Exhibit 8.

13. Helios AMC, LLC ("Helios") is the special servicer in connection with the Loan and is empowered to take actions on behalf of the Trustee in connection with the Loan.

**B.  Treatment of Secured Claims under the Original Plan and Original Confirmation Order**

14. Class 1 of the Debtor's Original Plan consists of the claim of the Trustee based on the Mortgage and Note A. The Original Plan and Confirmation Order required the Debtor to make equal monthly payments of principal and interest due on the eleventh day of every month beginning June 11, 2010, with the entire unpaid balance due and payable by July 11, 2016. The Original Plan and Confirmation Order further provided that all terms of the Mortgage and Note A shall survive except for certain specified terms identified in modified Section 4.01 of the Original Plan.

15. Class 2 of the Original Plan consists of the claim of Trustee based on the Mortgage and Note B. The Original Plan and Confirmation Order required the Debtor to make equal monthly payments of principal and interest due on the eleventh day of every month beginning June 11, 2010, with the entire unpaid balance due and payable by July 11, 2016. The

4

Original Plan and Confirmation Order further provide that all terms of the Mortgage and Note B shall survive except for certain specified terms identified in modified Section 4.02 of the Original Plan.

**C.  The Debtor Defaults Under The Original Plan And Confirmation Order**

16. The Notes and Mortgage are in default because the Debtor has failed to make payments when due under Note A, the Mortgage, and the Original Confirmation Plan and Order. Despite demand, the Debtor failed to pay these amounts.

17. As a result of this default, the Trustee initiated the Foreclosure Action and filed a motion to appoint a receiver in the Circuit Court of Cook Count, Case No. 11 CH 21148 on June 13, 2011.

## ARGUMENT

**A.  RELIEF FROM STAY SHOULD BE GRANTED PURSUANT TO THE TERMS OF THE ORIGINAL CONFIRMATION ORDER.**

18. The Debtor specifically negotiated as part of the Original Confirmation Order that relief from the automatic stay would be granted as a matter of right if the Debtor defaulted under the Original Plan and/or the Original Confirmation Order:

> **(k)  If the Debtor defaults under any material provision of the Plan, or the Confirmation Order, and the Debtor fails to cure such default within ten (10) days, the Debtor stipulates that the automatic stay under 11 U.S.C. §362(a) shall be modified immediately to permit the Lender to foreclose on the property and to take such further legal action that it is entitled to take under the loan documents.**

Original Confirmation Order, p. 6 at ¶ (k) (emphasis added).

19. The Debtor expressly agreed to this language and therefore should be bound by the terms of its agreement in the Confirmation Order rather than utilizing Chapter 11 once again to circumvent this agreement.

5

**B. THE CHAPTER 11 CASE SHOULD BE DISMISSED AS A BAD FAITH SERIAL FILING.**

20. This chapter 11 case is <u>not</u> the Debtor's first chapter 11 filing. Rather, as set forth above, it has been only one year since this Court closed the First Bankruptcy Case. The Debtor's efforts to thwart the terms of the Original Confirmation Order and Original Plan should not be permitted:

> Courts agree that the general rule is that a reorganized debtor may not file a new plan to effect a modification of its substantially consummated plan. The terms of a confirmed plan are binding on the parties and should be given *res judicata* effect. The terms of a confirmed plan usually represent the results of negotiations between the debtor and its creditors, and the parties should be able to rely on the finality of those terms.

<u>In re Woods</u>, No 10-12397, 2011 WL 841270, at *3 (Bankr. D. Kan. Mar. 7, 2011) (quoting <u>In re Adams</u>, 218 B.R. 597, 600 (Bankr. D. Kan. 1998)). Here, the Trustee should be able to rely upon the terms of the Original Plan and Confirmation Order.

21. As noted by the <u>Woods</u> Court:

> The strong prohibition on post-consummation modifications in § 1127(e) preserves an important finality principle in reorganizations. Creditors will be less likely to accept and rely on chapter 11 debt restructuring if they know that the deals can be undone any time the debtor's fortunes wane. Creditors deserve to be able to rely on confirmed plans, particularly when the plan is the result of negotiations and agreements between debtors and the creditor . . . .

<u>Id</u>. at *5.

22. Here, the terms of the Original Plan and Original Confirmation Order were the result of extended negotiations between the Debtor and its creditors. To now disavow those terms presents an impermissible modification of the Debtor's Original Plan.

23. Indeed, the <u>Woods</u> court reasoned that serial filings present impermissible modifications of a confirmed plan absent unforeseeable and extraordinary circumstances:

6

> Because § 1127 prohibits a reorganized debtor from modifying its plan once that plan has been substantially consummated, many courts conclude that permitting that debtor to accomplish the same end via a new filing would circumvent that section's clear prohibition. Moreover, as these courts point out, permitting a debtor to make a serial filing allows it to evade binding responsibilities it incurred in proposing and confirming the previous plan. Because the creditors have acted in reliance on the earlier plan, it should not be subject to further modification. Only where there has been a showing of "genuine need" for further reorganization that is established by an extraordinary change of circumstances that were unanticipated and not reasonably foreseeable at the time of the first plan, should a debtor be given a second opportunity to reorganize.

Id.

24. Here, no such unforeseeable and extraordinary change of circumstances has occurred. The only difference between the First Bankruptcy Case and the Second Bankruptcy Case is that the Trustee is seeking to avail itself of its rights under the terms of the Original Confirmation Order by foreclosing as a result of the Debtor's default. The exercise of such clearly spelled out rights is hardly unforseeable and was, in fact, actually anticipated by the Debtor as it was specifically included in the Original Confirmation Order itself.

25. The fact that a Debtor in chapter 11 is unable to refinance or sell its property to satisfy its debt to its lender does not constitute an unforeseeable or extraordinary circumstance that would excuse the bar on a serial refilling. Id. at *4. (the debtor was "still unable to complete a refinancing or sell enough ground to pay down their debt to satisfy Hillcrest. While these circumstances are undoubtedly sad, inability to refinance is not the unforeseeable intervening cause . . . ."). In fact, "[o]ne of the foreseeable risks of operating any business is the fluctuation in supply and demand and its impact on the market. For that reason, "'changed market conditions alone are not sufficiently changed circumstances to warrant a second filing.'" In re Motel Properties, Inc., 314 B.R. 889, 896 (Bankr. S.D. Ga. 2004).

7

26. In fact, courts have repeatedly recognized and upheld this proposition:

> Because the debtor should generally be bound by the terms of the confirmed plan and live with the benefits and burdens of its bargain, only changes that were unanticipated and not reasonably foreseeable at the time of confirmation or substantial consummation can justify the filing of a new reorganization plan. If the debtor's income decreases or expenses increase because of ordinary and foreseeable changes in the debtor's operations, or in the market, that does not constitute a sufficient change in circumstances. The occurrence of ordinary, foreseeable risks of doing business should not relieve the debtor of the terms of its confirmed plan.

In re Tillotson, 266 B.R. 565, 569 (Bankr. W.D.N.Y. 2001); see also In re Smith, 286 F.3d 461, 466 n.2 (7th Cir. 2002) ("serial bankruptcy filings may indicate bad faith"); In re Van Eck, 425 B.R. 54 (Bankr. D. Conn. 2010) (the debtor's filing of a chapter 11 case just two years after its initial chapter 13 case in order to avoid a foreclosure sale constituted "cause" for dismissal, explaining that "[u]sing a chapter 11 case as a platform to attack final orders of other courts constitutes Other Cause [for dismissal]"); In re Jackson, 91 B.R. 473, 474 (Bankr. N.D. Ill. 1988) ("Attempts to use serial filings to achieve purposes otherwise unattainable under the Bankruptcy Code have been characterized as 'bad faith' by other Courts") (citing Matter of Troutman, 11 B.R. 108 (Bankr. E.D.N.Y. 1981); In re Diego, 6 B.R. 468 (Bankr. N.D. Cal. 1980)).

27. Here, the Debtor filed its second chapter 11 little over one year after its Original Plan was confirmed. It is clear from its defaults that it is unable to carry out the terms of the Original Plan and this Court's previously entered Confirmation Order. Moreover, the fact that it has filed this chapter 11 case on the heels of the Trustee's Motion for Appointment of a Receiver establishes that the Debtor is using "serial filings to achieve a purpose otherwise unattainable"— namely, to maintain possession over the Property in spite of its defaults and the Trustee's security rights. Accordingly, the chapter 11 case should be dismissed.

28. As a result, this Court should not countenance this Debtor's serial filing and should dismiss this Second Bankruptcy Case.

## C. THE CHAPTER 11 FILING SHOULD BE DISMISSED FOR CAUSE UNDER 11 U.S.C. § 1112(B).

29. Section 1112(b) allows the court to dismiss a chapter 11 case if the movant establishes "cause" for such dismissal, and provides in relevant part:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest . . . and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

30. Section 1112(b)(4) of the Bankruptcy Code sets forth a list of acts or omissions that may constitute "cause," but this list is not exhaustive. In re LG Motors, Inc., 422 B.R. 110, 115 (Bankr. N.D. Ill. 2009). Rather, a court has broad discretion to dismiss a chapter 11 case for "cause" under § 1112(b), including a determination that the petition was filed in "bad faith." Matter of Woodbrook Assoc., 19 F.3d 312, 316 (7th Cir. 1994); In re 801 South Wells Street Ltd. P'ship, 192 B.R. 718, 727 (Bankr. N.D. Ill. 1996) (dismissing involuntary chapter 11 petition where debtor had no reasonable likelihood of reorganizing and timing of filing indicated intent to delay pending foreclosure action). Courts have recognized that "whether the debtor has presented a legitimate reorganizational objective within the scope of the Bankruptcy Code or rather has presented 'tactical reasons unrelated to reorganization'" is the relevant inquiry for a court deciding whether to dismiss a petition as a "bad faith" filing. In re Original IFPC Shareholders, Inc., 317 B.R. 738, 749-50 (Bankr. N.D. Ill. 2004); see also In re 801 South Wells,

9

192 B.R. at 727 ("In determining whether a petition has been filed in bad faith, the court is primarily concerned with the underlying question of whether reorganization is the proper course of action in a particular case.").

31. A debtor's bad faith filing of a bankruptcy petition is sufficient "cause" to warrant dismissal of the case under § 1112(b). In re C-TC 9th Ave. P'Ship, 113 F.3d 1304, 1312 (2d Cir. 1997); HBA East, 87 B.R. at 258; In re Trina Assoc., 128 B.R. 858, 872 (Bankr. E.D.N.Y. 1991); In re Gucci, Inc., 174 B.R. 401, 409 (Bankr. S.D.N.Y. 1994); In re Coffee Cupboard, Inc., 119 B.R. 14, 18 (Bankr. E.D.N.Y. 1990). "Thus, inherent in the statute and clearly inferred in § 1112(b) is the requirement of good faith on the part of a debtor to file and maintain a chapter 11 case. This implicit good faith chapter 11 prerequisite has been consistently upheld by the courts." HBA East, 87 B.R. at 258 (citations omitted).

32. On the matter of good faith, the court in HBA East observed as follows:

> As a general rule where, as here, the timing of the filing of a chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose for the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.
> . . .
> An important factor to consider in determining whether a chapter 11 case was initiated in good faith is whether the reorganization effort essentially involves a two-party dispute which can be resolved in a non-bankruptcy forum. [citations omitted]. These chapter 11 cases do not represent efforts pitched to a 'business reorganization' or to 'restructure a business's finances.' They are essentially a two-party civil lawsuit involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under chapter 11.

Id. at 260.

33. While no single factor has been held determinative on the issue of good faith, courts have found bad faith when certain factors "indicate that an attempt at reorganization would be futile." In re Trina Assoc., 128 B.R. at 872. While the facts and circumstances of each

10

case must be examined when determining if bad faith exists to dismiss under § 1112(b), "there are circumstances typical of most cases filed in bad faith which are indicia that the petition for relief should be dismissed." Id.; see also HBA East, 87 B.R. at 259.

34. In deciding whether to dismiss a petition for bad faith pursuant to § 1112(b), courts have considered the following indicia of bad faith:

- The debtor has only one asset – the property;
- The debtor has few unsecured creditors whose claims are small in relation to the claims of secured creditors;
- The debtor has few employees;
- The property is the subject of a foreclosure action as a result of arrearages on the debt; and
- The timing of the filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

801 South Wells, 192 B.R. at 727 (quoting In re East-West Assoc., 106 B.R. 767, 771-72 (Bankr. S.D.N.Y. 1989)).

35. Every one of these factors is present here leaving no doubt that this was a bad faith filing by the Debtor.

36. First, the Debtor's sole assts consist of the two Properties, which are encumbered by the Trustee's lien.[2]

37. Second, the Debtor's unsecured debt totals approximately $403,000, which is miniscule compared to what it owes the Trustee. Moreover, much of these "unsecured claims" appear to belong to the Debtor's insiders.

---

[2] Interestingly, the Debtor's bankruptcy petition in the First Bankruptcy Case specially acknowledged that the First Bankruptcy Case was a single asset real estate case. See Bankruptcy Petition in 09-10099. However the second petition does not specify that this case is a single asset case. Yet nothing has changed between the filing of the First and Second Bankruptcy Cases that would render this case anything other than a single asset case.

11

38. <u>Third</u>, it does not appear that the Debtor has any employees other than its principals.

39. <u>Fourth</u>, the Foreclosure Action was initiated against the Properties based on the Debtor's defaults under the Loan Documents, the Original Plan and this Court's Original Confirmation Order. This chapter 11 case was the only possibility for the Debtor of forestalling its loss of the Properties.

40. <u>Fifth</u>, it was only upon the complete dissolution of the Debtor's discussions with the Trustee and literally <u>hours</u> before the hearing on the Motion for Appointment of a Receiver that the Debtor filed its chapter 11 petition. Accordingly, it is clear from the timing of the Debtor's chapter 11 filing that the Debtor has no intention of using the chapter 11 process to reorganize, but rather, as a litigation tactic to delay the Foreclosure Action and attempt to gain leverage in reaching a settlement with the Trustee under the Loan Documents. See <u>Trina Assoc.</u>, 128 B.R. at 873 (in addition to the objective factors listed above, the subjective factor of the debtor's honest intent to reorganize has been considered when determining whether to dismiss a petition or to lift the automatic stay for lack of good faith); <u>In re Cohoes Industrial Terminal, Inc.</u>, 931 F.2d 222, 228 (2d Cir. 1991) ("Because bankruptcy filings must be made in good faith, an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally – the debtor must have some intention of reorganizing.").

41. In sum, it is clear that the chapter 11 case was commenced in bad faith based on numerous factors relied on by courts when making that determination. The Debtor should not be permitted a "second bite at the apple" by undoing the indefensible consequences of the Foreclosure Action. See <u>In re Setzer</u>, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985); <u>In re Wally Findlay Galleries (New York) Inc.</u>, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984).

12

MILW_11347445.1

### D. THE COURT SHOULD DISMISS THIS CASE UNDER 11 U.S.C. § 305(A)(1) AS IT IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS.

42. Section 305(a)(1) of the Bankruptcy Code also provides a basis for dismissal. Section 305(a)(1) allows a court to dismiss a bankruptcy case if such dismissal is in the best interests of the debtor and its creditors. It provides in relevant part: "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time, if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).

43. The following factors are relevant to determining whether dismissal is warranted under § 305(a)(1) of the Bankruptcy Code:

- Economy and efficiency of administration;
- The availability of another forum to decide those issues;
- The purpose of the bankruptcy;
- Any prejudice to the parties; and
- The presence of unsettled issues of non-bankruptcy law.

In re Int'l Zinc Coatings & Chem. Corp., 355 B.R. 76, 82 (Bankr. N.D. Ill. 2006). Other factors sometimes considered include the nature of the estate's assets and the motivations of the parties. Id. Applying these factors to the case at hand, it is clear that the Debtor and its creditors would benefit from dismissal under § 305(a)(1) of the Bankruptcy Code.

44. First, this is a two-party dispute pending in state court. This matter should stay there. Going forward with this bankruptcy case only adds an additional and unnecessary layer of litigation and expenses to the dispute between the Debtor and the Trustee and delays the Trustee from realizing on its collateral after the Debtor.

45. <u>Second</u>, as discussed above, not only is there another forum – the state court – available to decide the issues and protect the interests of both the Debtor and the Trustee, but there is already a proceeding in that forum – the Foreclosure Action.

46. <u>Third</u>, it is apparent that the only reason this bankruptcy case was commenced was to prevent a judicial sale of the Properties in the Foreclosure Action. The Debtor's case fails to serve the purposes of chapter 11 because the Debtor has few employees, few unsecured creditors, and no prospect of reorganization.

47. <u>Fourth</u>, the Trustee will suffer prejudice if the Debtor is allowed to go forward with its chapter 11 petition, because it will be delayed in enforcing its contractual and legal right to sell the Properties. On the other hand, the Debtor and its creditors will not suffer any prejudice if the chapter 11 petition is dismissed, because the Debtor's only assets, the Properties, are subject to the Trustee's perfected mortgage lien.

48. <u>Fifth</u>, the Debtor filed its chapter 11 petition in bad faith. The Debtor's sole significant asset is the Properties, and the filing of the chapter 11 petition was timed strategically to frustrate the Trustee's right to foreclose upon and sell the Properties in satisfaction of a debt exceeding $18 million which has already been restructured once before through the chapter 11 process.

49. Based on the foregoing, dismissal of this bankruptcy case is warranted pursuant to § 305(a)(1) of the Bankruptcy Code.

### E. **THE AUTOMATIC STAY SHOULD BE TERMINATED PURSUANT 11 U.S.C. § 362.**

50. While there are ample grounds for dismissing the chapter 11 case, as described above, the Trustee alternatively requests that the Court lift the automatic stay so that it may

enforce its rights under the Loan Documents, including preserving and safeguarding its collateral and proceeding with a foreclosure action against the Debtor.

51. Pursuant to § 362(d)(1) of the Bankruptcy Code, bankruptcy courts "shall grant relief from the stay… (1) for cause, including the lack of adequate protection of an interest in property ...." 11 U.S.C. § 362(d)(1). Courts recognize bad faith as "cause" to lift the automatic stay. See In re Sparrgrove, 313 B.R. 283, 289 (W.D. Wis. 2004) (upholding bankruptcy court's dismissal of petition and injunction against refilling of petition on grounds that petition was filed in "bad faith" to prevent creditors from taking control of mortgaged property); In re Syed, 238 B.R. 126, 133 (Bankr. N.D. Ill. 1999) (annulling stay to allow foreclosure where debtor's filing of a petition to avoid foreclosure and lack of reasonable possibility of reorganization demonstrated bad faith); In re N.R. Guaranteed Retirement, Inc., 112 B.R. 263, 270-71 (Bankr. N.D. Ill. 1990) (noting "scores of chapter 11 cases" in which relief from stay has been granted because a petition was filed in bad faith); Matter of Grieshop, 63 B.R. 657, 664 (N.D. Ind. 1986) (reversing bankruptcy court's denial of motion to lift stay where debtor showed "bad faith" in filing petition to avoid foreclosure and had no reasonable likelihood of reorganization).

52. The same non-exhaustive factors that apply when a court determines whether to dismiss a petition as set forth above also apply when a court is deciding whether to lift the automatic stay under § 362(d). In re Cadwell's Corners P'ship, 174 B.R. 744, 762 (Bankr. N.D. Ill. 1994). Courts have considered these factors in evaluating whether a debtor filed its petition in bad faith:

> Several, but not all, of the following factors usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments

> pursuant to 11 U.S.C. §§ 61, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending against the foreclosure in state court. . . . Bankruptcy offers the only possibility of forestalling loss of the property.

In re Schmitt Farm P'ship, 161 B.R. 429, 435 (N.D. Ill. 1993) (quoting In re Little Creek Dev., 779 F.2d 1068, 1072-73 (5th Cir. 1986)).

53. In Schmitt Farm, the debtors were the owners of a single parcel of real estate and were in substantial default under their mortgage. Two hours before the state court trial on foreclosure of their property, the debtors filed a chapter 11 petition. The district court affirmed the bankruptcy court's decision that the debtors' case was filed in bad faith based on the fact that the factors quoted above were "startlingly applicable" to the case. Id. at 435.

54. The lack of any reasonable possibility of success of reorganization of the debtor is another indicia of bad faith. In In re Sparrgrove, the district court upheld the bankruptcy court's determination that the debtor's preliminary reorganization plan presented no means by which the debtor could pay the claims of the debtor's principal secured creditor. 313 B.R. at 288. The bankruptcy court had determined from this fact that the debtor's aim in filing its petition was to avoid, rather than recognize, its debts, which constituted bad faith. Id. As the district court stated, "[t]he clearest case of bad faith is where the debtor enters [title] 11 knowing that there is no chance to reorganize his business and hoping merely to stave off the evil day when the creditors take control of his property." Id. (quoting Matter of James Wilson Assoc., 965 F.2d 160, 170-71 (7th Cir. 1992)).

55. In In re Park Place Assoc., a mortgagee of the debtor's real estate filed a motion to dismiss the debtor's chapter 11 petition as a "bad faith filing." 115 B.R. 940 (Bankr. N.D. Ill. 1989). The court noted that a number of the bad faith factors were present: (1) the debtor had

16

only one asset – its real estate; (2) the senior secured lender's lien fully encumbered the real estate, real estate taxes remained unpaid and mechanics' liens attached to the real estate; (3) the debtor had few employees; (4) the debtor has little or no cash flow and did not have any other source of income to provide adequate protection; and (5) the mortgagor had a pending foreclosure action against the debtor. See id. at 946-47. The court thus held that "[c]ause exists for dismissing the chapter 11 case filed herein. The case was filed in bad faith. The Debtor cannot rehabilitate in any business sense, and has not shown any meaningful possibility of rehabilitating in a financial sense." Id. at 947; see also In re MacInnis, 235 B.R. 255, 260 (S.D.N.Y. 1998) (reversing bankruptcy court's decision denying motion to lift stay due to bad faith where debtor had one principal asset, few creditors other than movant and their claims were *de minimis*, no employees and no cash flow or prospects for reorganization); In re Club Tower L.P., 138 B.R. 307, 310 (Bankr. N.D. Ga. 1991) (lifting automatic stay due to bad faith filing where debtor had a single real estate asset, few unsecured creditors with small claims, no employees and no sources of income to support a plan or make adequate protection payments).

56. As previously averred, all of the indicia of a bad faith filing are abundantly present in this case

57. Chapter 11 was not intended as a haven for single-asset debtors with few employees and little hope of reorganization. The Debtor should not be allowed to use the automatic stay as a tool to increase its leverage in a two-party dispute with the Trustee that belongs in state Court. The automatic stay should therefore be modified for "cause," due to the Debtor's bad faith in filing its chapter 11 petition.

## **CONCLUSION**

58. For the foregoing reasons, the Trustee respectfully requests that this Court enter an Order dismissing the instant bankruptcy case of the Debtor, or alternatively, granting the

17

Trustee relief from the automatic stay, and granting the Trustee such other and further relief as the Court deems just and proper.

Dated: June 24, 2011

/s/ Erik G. Weidig
Jill L. Nicholson
Joanne Lee
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
Ph: (312) 832-4500
Fax: (312) 832-4700
Email: jnicholson@foley.com

-and-

Erik G. Weidig
Foley & Lardner
777 E Wisconsin Avenue
Milwaukee, WI 53202
Ph: (414) 297-5509
Fax: (414) 297-4900
Email: eweidig@foley.com