UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

| In re: | § | |
|---|---|---|
| | § | Case No. 11−14038−TSU |
| JACKSON GREEN, LLC, | § | |
| | § | Chapter 11 |
| | § | |
| Debtor. | § | Hon. Thomas S Utschig |
| | § | |

**OBJECTION OF WELLS FARGO BANK, N.A., AS TRUSTEE,
TO DEBTOR'S MOTION FOR USE OF CASH COLLATERAL,
TO SHORTEN THE NOTICE TO TEN DAYS AND TO LIMIT
NOTICE TO THE U.S. TRUSTEE AND WELLS FARGO BANK N.A.**

Wells Fargo Bank, N.A., as trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-C4 (the "Trustee"), by its undersigned counsel, respectfully files this objection (the "Objection") to the motion of Jackson Green, LLC (the "Debtor") for Use of Cash Collateral, to Shorten the Notice to Ten Days and to Limit Notice to the U.S. Trustee and Wells Fargo Bank N.A. (the "Motion"). In further support of the Objection, the Trustee respectfully asserts as follows:

**PRELIMINARY STATEMENT**

1. This case is the **second** chapter 11 case (the "Second Bankruptcy Case") the Debtor[1] has filed within the last 2 and ½ years. The Debtor originally filed for bankruptcy before this Court on January 9, 2009 (the "First Bankruptcy Case"), Case No. 09-10099. The Court confirmed the Debtor's chapter 11 plan (the "Original Plan") on May 18, 2010 – only a mere thirteen months ago.

---

[1] The Debtor is the owner of a commercial office building and parking lot in Chicago (the "Properties").

2. Notwithstanding the express provisions of the order confirming the Original Plan (the "Original Confirmation Order"), which expressly provided that the Trustee is entitled to foreclosure upon the Properties if the Debtor defaulted under the Original Plan (see Original Confirmation Order at 6), the Debtor filed this second bankruptcy to stay the pending foreclosure proceeding in Cook County, Illinois (the "Foreclosure Action") and on the eve of the hearing seeking the appointment of a receiver in that Foreclosure Action.

3. As a result of the Debtor's "chapter 22, " the Trustee filed a Motion to Dismiss Debtor's Chapter 11 Case or in the Alternative Modify the Automatic Stay (the "Motion to Dismiss/Lift Stay"). The Motion sets forth no less than five reasons why such relief should be granted and is incorporated by reference as if fully set forth herein.

4. The Debtor now seeks to fund its Second Bankruptcy with the Trustee's cash collateral, per the budget attached to its Motion (the "Budget").

5. The Trustee objects to the use of cash collateral. First, the use of cash collateral should not be granted where the Debtor has filed this case for the improper purpose of thwarting the terms of the Original Plan and Confirmation Order and solely for the benefit of the Debtor's insiders. Second, in the event the Court permits the use of cash collateral pending the Motion to Dismiss/Lift Stay, the Trustee objects to certain line items included in the Debtor's Budget, including insiders' self-management fees and certain unexplained general and administrative costs.

A. **The Loan Documents**

6. On or about June 9, 2006, Jackson Green executed certain loan documents (collectively, the "Loan Documents"), including certain notes (the "Notes") in connection with a commercial loan (the "Loan") extended by Column Financial, Inc. ("Column") related to two Chicago commercial properties, which have the addresses of 833 W. Jackson Boulevard,

Chicago, Illinois and 322 S. Green Street, Chicago, Illinois, respectively (the "Properties"). One property is a commercial office building and the other is a parking lot that supports the office building. Jackson Green's indebtedness under the Loan is secured by, inter alia, a Mortgage, Security Agreement and Fixture Financing Statement (the "Mortgage") that encumbers these Properties, as well as an Assignment of Leases and Rents, both of which were duly recorded with the Cook County, Illinois Recorder of Deeds (the "Cook County Illinois Recorder").

7. Specifically, the Loan was bi-furcated into two notes: an "A" note ("Note A") and a "B" note ("Note B," collectively, the "Notes"). Pursuant to Note A, Jackson Green borrowed a total of $17,748,000.00, bearing an interest rate of 6.18% per annum and was obligated to make equal monthly installments of $106,470.76. Pursuant to Note B, Jackson Green borrowed a total of $1,137,500.00, bearing an interest rate of 12.25% per annum and was obligated to make equal monthly installments of $11,919.82.

8. On June 9, 2006, Column, as assignor, executed an Assignment of Mortgage, Security Agreement and Fixture Financing Statement and Assignment of Leases and Rents to Lender, as assignee (the "Assignment"). The Assignment was duly recorded with the Cook County Illinois Recorder.

9. The Trustee also caused to be filed (i) a UCC Financing Statement filed by Original Lender, as Collateral Agent for the holder of the A Note and the holder of the B Note, on or about June 14, 2006, as Document Number 0616516086 with the office of the Cook County Recorder of Deeds; and (ii) a UCC Financing Statement, filed by Original Lender, as Collateral Agent for the holder of the A Note and the holder of the B Note, on or about June 30, 2006, with Illinois Secretary of State bearing file number 11111548.

CHIC_5439645.3

10. Helios AMC, LLC is the special servicer in connection with the Loan and is empowered to take actions on behalf of the Trustee in connection with the Loan.

**B. The Debtor Defaults Under The Original Plan And Confirmation Order**

11. The Notes and Mortgage are in default because the Debtor has failed to make payments when due under Note A, the Mortgage, and the Original Confirmation Plan and Order. Despite demand, the Debtor failed to pay these amounts.

12. As a result of this default, the Trustee initiated the Foreclosure Action and filed a motion to appoint a receiver in the Circuit Court of Cook Count, Case No. 11 CH 21148 on June 13, 2011.

**ARGUMENT**

**I. THE USE OF CASH COLLATERAL SHOULD BE DENIED BECAUSE THE DEBTOR HAS FILED THIS SECOND BANKRUPTCY CASE FOR THE IMPROPER PURPOSE OF THWARTING THE TERMS OF THE ORIGINAL PLAN AND CONFIRMATION ORDER AND SOLELY FOR THE BENEFIT OF THE DEBTOR'S INSIDERS.**

13. The Debtor has requested that it be permitted to use cash collateral and indicated that it will seek a § 363 sale of the Properties in bankruptcy. Yet such a request underscores the Debtor's efforts to stall and delay the foreclosure for the benefit of the Debtor's owners Paula and David Heyes.

14. First, a § 363 sale achieves the same result as a foreclosure – the sale of the Properties. The only difference here is that the Debtor's principals Paula and David Heyes continue to self-manage the Property in bankruptcy while a receiver would have been appointed in the Foreclosure Action.[2]

---

[2] As a related point, it was under the management of Paula and David Heyes that the Debtor filed the First Bankruptcy Case. Under their continued management, the Debtor has now filed the Second Bankruptcy Case. Paula and David Heyes manage the Chicago Properties from Wisconsin.

4

15. As such, this case was not filed to benefit the Debtor, its estate, or its creditors, but rather to benefit exclusively the Debtor's insiders Paula and David Heyes, who extract a self-management fee from the Properties each month. As a result, this Court should not countenance the use of cash collateral in this Second Bankruptcy Case for the sole purpose of permitting a self-management fee. Such a use is a waste of this Court's limited time and resources, as well as an unnecessary depletion of the Trustee's collateral.

16. Second, this Second Bankruptcy Case contravenes the Debtor's express consent to a foreclosure in the event of a breach of the Original Plan and Confirmation Order. No other explanation for this filing exists except for the Debtor's desire to impermissibly "retrade the deal" it struck in the Original Plan. (See Motion to Dismiss/Lift Stay at 5-7; see also In re Smith, 286 F.3d 461, 466 n.2 (7th Cir. 2002) ("serial bankruptcy filings may indicate bad faith"); In re Van Eck, 425 B.R. 54 (Bankr. D. Conn. 2010) (the debtor's filing of a chapter 11 case just two years after its initial chapter 13 case in order to avoid a foreclosure sale constituted "cause" for dismissal, explaining that "[u]sing a chapter 11 case as a platform to attack final orders of other courts constitutes Other Cause [for dismissal]"); In re Jackson, 91 B.R. 473, 474 (Bankr. N.D. Ill. 1988) ("Attempts to use serial filings to achieve purposes otherwise unattainable under the Bankruptcy Code have been characterized as 'bad faith' by other Courts") (citing Matter of Troutman, 11 B.R. 108 (Bankr. E.D.N.Y. 1981); In re Diego, 6 B.R. 468 (Bankr. N.D. Cal. 1980)).

17. As a result, this Court should not permit the use of cash collateral where the use of such collateral is intended only to further a bankruptcy designed to thwart the legitimate terms and conditions of the Original Plan and Confirmation Order, as well as effectuate a sale that can already be achieved in a non-bankruptcy forum.

5

## II. IN THE EVENT THE COURT APPROVES THE USE OF CASH COLLATERAL, CERTAIN EXPENSES IN THE DEBTOR'S BUDGET SHOULD BE STRICKEN.

18. In the event the Court approves the use of cash collateral by the Debtor pending the Court's decision on the Motion to Dismiss/Lift Stay, the Court should strike certain line items in the Budget, including proposed "Management Fees" of $5,918.00, as well as "General & Admin." in them amount of $6,098.00.

19. The Debtor is not proposing that the Management Fees be paid to a third-party management company. Rather, the Debtor proposes paying this fee to the owners/insiders, David Heyes and Paula Heyes. The Properties are self-managed and the estate should not be forced to fund the salaries of the Debtor's principals, particularly in light of the bad faith evinced by the serial filing (as set forth in greater detail in the Trustee's Motion to Dismiss/Lift Stay).

20. In addition, the Budget sets aside $6,098.00 for the month of July for "General & Admin." There is no explanation in either the Motion or the Budget regarding what or whom the Debtor is proposing to pay in this line item. The Court should not permit the use of the Trustee's Cash Collateral without—at minimum—a break down of the items contained within the "General & Admin" category.

## CONCLUSION

21. For the foregoing reasons, the Trustee respectfully requests that this Court enter an Order denying the Debtor's Motion, or alternatively, conditioning the Debtor's use of Cash Collateral upon the removal of the "Management Fees" and "General & Admin" categories from the Budget.

Dated: July 5, 2011

/s/ Erik G. Weidig
Jill L. Nicholson
Joanne Lee

6

CHIC_5439645.3

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
Ph:  (312) 832-4500
Fax:  (312) 832-4700
Email:  jnicholson@foley.com

-and-

Erik G. Weidig
Foley & Lardner
777 E Wisconsin Avenue
Milwaukee, WI 53202
Ph:  (414) 297-5509
Fax:  (414) 297-4900
Email:  eweidig@foley.com

# CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2011, I electronically filed the following document with the Clerk of Court using the ECF system:

**OBJECTION OF WELLS FARGO BANK, N.A., AS TRUSTEE, TO DEBTOR'S MOTION FOR USE OF CASH COLLATERAL, TO SHORTEN THE NOTICE TO TEN DAYS AND TO LIMIT NOTICE TO THE U.S. TRUSTEE AND WELLS FARGO BANK N.A.**

The ECF system will send notification of such filing to the following:

- Terrence J. Byrne   byrne@byrnelaw.com
- Randi L. Osberg   jdawson@ruderware.com, WI01@ecfcbis.com
- U.S. Trustee's Office   USTPRegion11.MD.ECF@usdoj.gov

/s/ Erik G. Weidig

CHIC_5439645.3